**HOWARD et al. v. UNITED STATES et al.**

No. 400.

District Court, E. D. Louisiana.

Aug. 29, 1941.

Spencer, Phelps, Dunbar & Marks and Esmond Phelps, all of New Orleans, La., for plaintiffs.

Rene A. Viosca, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., for defendants.

BORAH, District Judge.

This action was filed by plaintiffs on October 9, 1940, and has for its object the recovery of an alleged overpayment of federal estate taxes in the amount of $305,766.65, plus interest. The case was tried by the Court without a jury on the following stipulated facts:

1. Plaintiffs are, and have been ever since October 7th, 1937, the testamentary executors of the late Alvin Pike Howard, by virtue of proceedings had in the Civil District Court for the Parish of Orleans, State of Louisiana, in the matter entitled "Succession of Alvin Pike Howard," bearing No. 223,673 of the docket of the said court.

Plaintiffs are citizens of the State of Louisiana and reside in the City of New Orleans, Parish of Orleans, State of Louisiana, the same being within the New Orleans Division of the Eastern District of Louisiana.

2. Grady C. Durham, defendant herein, was appointed on July 1, 1940, Acting Collector of Internal Revenue of the United States of America in and for the Internal Revenue Collection District of Louisiana, and was duly qualified and acted as such; that he has been for many years and is now a resident in and an inhabitant of the New Orleans Division of the Eastern Judicial District of Louisiana. Throughout the period from January 1, 1938, to July 1, 1940, Rufus W. Fontenot was Collector of Internal Revenue of the United States of America in and for the Internal Revenue Collection District of Louisiana, and was duly qualified and acting as such. On December 16, 1940, Paul H. Maloney was appointed Collector of Internal Revenue of the United States of America in and for the District of Louisiana and is now serving as said Collector.

3. This is an action based upon the laws of the United States providing for the recovery of estate taxes imposed under the Revenue Acts of 1926 and 1932, as amended, 26 U.S.C.A.Int.Rev. Acts, pages 145, 482, alleged to have been erroneously and illegally assessed and collected by Rufus W. Fontenot, former Collector of Internal Revenue of the United States of America in and for the Internal Revenue Collection District of Louisiana, and by Grady C. Durham, Acting Collector of Internal Revenue of the United States of America in and for the Internal Revenue Collection District of Louisiana. The amount sought to be recovered is three hundred and five thousand, seven hundred and sixty-six and 65/100 ($305,766.65) dollars, with statutory interest and costs. The jurisdiction of this Court is based upon Section 24, paragraph 5, of the Judicial Code (United States Code Annotated, Title 28, Section 41(5), and upon Section 24, Paragraph 20, of the Judicial Code (United States Code Annotated, Title 28, Section 41(20).

4. Alvin Pike Howard was born on May 20, 1889, and died on September 29, 1937. Throughout his entire life he was a resident of and domiciled in the City of New Orleans, State of Louisiana. He was married on January 3, 1914, to Laura Hayward Howard, who survived him. There was no stipulation between them against the existence of a community of acquets and gains. He left a last will and testament, in which he appointed, as executors of his estate, Laura Hayward Howard and Alvin Hayward Howard, who qualified after said will had been duly probated by the Civil District Court for the Parish of Orleans, State of Louisiana.

5. On December 24, 1938, Laura Hayward Howard and Alvin Hayward Howard, as testamentary executors of Alvin Pike Howard, filed with Rufus W. Fontenot, Collector of Internal Revenue at New Orleans, an estate tax return, in which they elected to have the property included in the gross estate of the decedent valued according to the method authorized by Subdivision (j) of Section 302 of the Revenue Act of 1926, as added by Section 202 of the Revenue Act of 1935. Said return showed a net estate subject to tax under 1926 Act of $1,076,708.50; a net estate subject to tax under the 1932 Act of $1,136,708.50; credit taken in the sum of $43,709.32 for State estate or inheritance taxes against the gross tax under the 1926 Act; and a total net tax of $222,637.40. Said sum of $222,637.40 was, on December 24, 1938, paid by plaintiffs to Rufus W. Fontenot, Collector of Internal Revenue at New Orleans.

6. On September 29, 1939, the United States Internal Revenue Agent in charge at New Orleans advised plaintiffs of a proposed deficiency in said Federal Estate Tax amounting in principal to $338,942.36.

7. On or about April 20, 1940, said plaintiffs executed and filed with the Southwestern Division, Technical Staff, Bureau of Internal Revenue, Treasury Department, at New Orleans, a document reading as follows:

"Form 890

"Treasury Department

"Internal Revenue Service

"Revised November, 1938

"Waiver of Restrictions Against Immediate Assessment and Collection of Deficiency in Estate Tax

"C-TS-SWD

"NO-WFD

"Estate of Alvin Pike Howard

"Date of Death: September 29, 1937

"District of Louisiana.

"Pursuant to the provisions of Section 308(d) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev. Acts, page 245, the undersigned executor or administrator of the above-named estate waives the restrictions provided in Section 308(a) of the Revenue Act of 1926, and consents to the assessment and collection of a deficiency in estate tax in the sum of $309,550.75, together with interest thereon as provided by law.

"In submitting this agreement the right is reserved by the taxpayer to file a timely claim for refund of that portion (only) of the above deficiency which is attributable to the inclusion in decedent's estate of rental income from Texas lands during the period September 29, 1937, to September 29, 1938, Schedule A, Form 706; of the income from stocks and bonds for the period September 29, 1937 to September 29, 1938, Schedule B, Form 706; of the Life Insurance under Schedule D, Form 706, treated as decedent's separate property, rather than community property; and of the donation made by decedent to his wife under Schedule G, Form 706, as being revocable during decedent's lifetime under Article 1749 of the Civil Code of Louisiana. In addition, in the event a timely claim for refund is filed and the taxpayer therein requests that proper credit be allowed for State estate, inheritance, legacy or succession taxes, such credit is to be allowed as is provided for by Section 301(c) of the Revenue Act of 1926, as amended by Section 802(a) of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev. Acts, page 226, upon submission by the taxpayer of the proper proof of credit required by Article 9(b), Regulations 80."

Through a letter dated April 29, 1940, plaintiffs were advised by William G. Cullen, Head, Southwestern Division, Technical Staff, that the proposal by them, embodied in said document, had been accepted by the Commissioner of Internal Revenue, upon recommendation of the Technical Staff; that the tax had been revised accordingly, as shown in the attached statement and schedules, to disclose a deficiency in Federal Estate Tax of $309,550.75, bearing interest, as provided by law; that the case would be closed on the foregoing basis, and that, in due course, they would receive a notice of demand for payment of the tax from the Collector of Internal Revenue for the New Orleans District.

8. Said deficiency of $309,550.75 was arrived at on the following basis:

A net estate subject to tax under the 1926 Act of $1,958,322.46; a net estate subject to tax under the 1932 Act of $2,018,322.46; allowance of credit against the gross tax under the 1926 Act in the sum of $32,374.38, for estate or inheritance taxes paid to the States of Louisiana and Texas; and a total net tax of $532,188.15, from which was deducted the amount of $222,637.40 paid at the time of the filing of the return, leaving a deficiency of $309,550.75.

9. On June 19, 1940, Rufus W. Fontenot, then Collector of Internal Revenue at New Orleans, gave plaintiffs notice and made demand upon them for payment of the tax in the aggregate amount of $334,947.77, consisting of $309,550.75 principal and $25,397.02 interest.

10. The entire amount of said deficiency, both in principal and interest, has been paid by plaintiffs by payment of the following amounts on the following dates:

| | |
|---|---|
| May 4, 1940 | $100,000.00 |
| May 13, 1940 | 50,000.00 |
| May 16, 1940 | 80,000.00 |
| May 21, 1940 | 50,000.00 |
| July 11, 1940 | 54,947.77 |

All of said payments, except that made on July 11, 1940, were made by plaintiffs to Rufus W. Fontenot, then Collector of Internal Revenue for the New Orleans District. The payment of $54,947.77, made on July 11, 1940, was made to Grady C. Durham, then Acting Collector of Internal Revenue for the New Orleans District.

11. The following items were included in computing the total gross estate of decedent, Alvin Pike Howard, and in levying said deficiency assessment:

First: Rental income from Texas lands during the period September 29, 1937, to September 29, 1938, aggregating the sum of $12,720.83;

Second: Income from stocks and bonds for the period September 29, 1937, to September 29, 1938, aggregating the sum of $49,385.85;

Third: Life Insurance, aggregating the sum of $100,455.72;

Fourth: Donations made by decedent to his wife, Laura Hayward Howard, in the aggregate amount of $670,088.50, consisting of $638,206.95 in principal and $31,881.55 income thereon for the period from September 29, 1937, to September 29, 1938.

12. On March 19, 1917, Mutual Life Insurance Company of New York issued its policy Number 2394587 on the life of Alvin P. Howard, in the sum of $100,000, payable to executors, administrators or assigns of the insured, with right reserved to the insured to change the beneficiary. On December 18, 1917, the beneficiary was changed by virtue of an endorsement on said policy reading as follows:

"The beneficiary is changed to insured's son, Alvin H. Howard, and insured's daughter, Frances Howard, share and share alike, or the survivor of them. The right to revoke this designation of beneficiary is reserved to the insured."

The aforesaid designation of beneficiaries was not revoked and said policy was payable at the time of decedent's death to said Alvin H. Howard and Frances Howard. The amount payable under said policy upon decedent's death was $100,437.84. Said policy was taken out by decedent, Alvin Pike Howard, during the existence of the community between decedent and his wife, Laura Hayward Howard.

On March 12, 1917, New York Life Insurance Company issued its policy Number 6111452 on the life of Alvin P. Howard, in the sum of $100,000, payable to the executors, administrators or assigns of the insured, or to the duly designated beneficiary, and on December 16, 1917, it made an endorsement thereon showing that the beneficiary had been changed to "Laura H. Howard, wife of the insured." The right was reserved under said policy to change the beneficiary but no change thereof was made and said policy was payable, at the time of decedent's death, to said Laura H. Howard. The amount payable under said policy upon decedent's death was $100,473.60. Said policy was taken out by decedent, Alvin Pike Howard, during the existence of the community between decedent and his wife, Laura Hayward Howard.

All of the premiums paid on each of said policies were paid by checks of the decedent, Alvin Pike Howard, drawn on bank accounts standing in his name. The decedent was a man of substantial wealth and of substantial income both before and during his marriage. During each year of his marriage his annual income substantially exceeded his annual expenses, and at the time of his death both his wealth and income were considerably greater than at the time of his marriage.

Said policies were listed on Schedule D of the Federal estate tax return filed by plaintiffs on December 24, 1938, but only one-half of the amounts payable under said policies was returned as being subject to the imposition of the Federal estate tax. The entire amount payable under said policies, to-wit, the sum of $200,911.44, was included in computing the total gross estate of decedent, Alvin Pike Howard, and in levying said deficiency assessment of $309,550.75.

13. Decedent, Alvin Pike Howard, made various donations of bonds payable to bearer and cash to Laura Hayward Howard, his wife. All of said donations were made prior to January 3, 1922, except the following:

(a) Donation on December 22, 1923, of $20,000.00 in cash;

(b) Donation on May 15, 1929, of $3,307.50 of Lincoln Building First 5½s;

(c) Donation on January 3, 1929, of $7,000 of California Edison Refunding 5s.

Said negotiable bonds and cash were delivered by decedent to his wife simultaneously with the making of each donation.

Decedent also, on June 22, 1920, donated to his said wife all paintings, statuary, bronzes, etc., contained in the family home at New Orleans.

14. The Commissioner of Internal Revenue included said donations within the decedent's gross estate because of the provisions of Article 1749 of the Civil Code of Louisiana. Said article provides:

"All donations made between married persons, during marriage, though termed inter vivos, shall always be revocable.

"The revocation may be made by the wife, without her being authorized to that effect by her husband, or by a court of justice."

The decedent, Alvin Pike Howard, did not himself, in making said donations, attach any conditions thereto or reserve, or attempt to reserve, any power through himself alone, or in conjunction with any other person, to alter, amend, revoke or terminate any of said donations. The decedent never attempted to alter, amend, revoke or terminate any of said donations.

15. At the time of the death of decedent, Alvin Pike Howard, and at the optional valuation date for estate tax purposes, said Laura Hayward Howard was possessed of some of the identical securities donated to her by decedent. The value, as of the optional valuation date, of those identical securities still possessed by Laura Hayward Howard was $445,374.63. Of this amount, $250,477.13 consisted of securities which had been the separate property of decedent, and the remaining $194,897.50 consisted of securities which had been community property. The entire balance of all of the donations made to her by the decedent was represented by other securities acquired by her either with the cash donated to her by decedent, or with the pro-ceeds realized by her from the payment, redemption or sale of the other securities donated to her by decedent.

16. There was included in computing the total gross estate of decedent, Alvin Pike Howard, and in levying said deficiency assessment of $309,550.75, an item of $670,088.50 as the value of said donations made by decedent to his wife, Laura Hayward Howard, said item consisting of:

(a) $631,288.95 as the value of the principal amount of the donations of cash and securities;

(b) $31,881.55 as the amount attributable to income derived from said donations during the period from September 29, 1937, to September 29, 1938; and

(c) $6,918.00 as the value of the donation of paintings, statuary, bronzes, etc.

The item of $631,288.95, which was included in the gross estate of decedent as the value of the principal amount of the donations of cash and securities, was made up as follows:

(a) $347,925.88 as the amount representing the value for estate tax purposes of those identical securities donated by decedent to his wife which were still possessed by her;

(b) The remainder, or $283,363.07, as the amount representing the value for estate tax purposes of the other securities acquired by said Laura Hayward Howard either with the cash donated to her by decedent or with the proceeds realized by her from the payment, redemption or sale of the other securities donated to her by decedent.

17. On July 18, 1940, plaintiffs duly filed, in the form and manner prescribed by law and with the officer designated by law, to-wit, Grady C. Durham, Acting Collector of Internal Revenue for the Collection District of Louisiana, at New Orleans, a claim for refund of said taxes and interest in the sum of $310,447.78, with interest thereon from the time of its payment until the date it is refunded. The grounds of said claim for refund are the same as those urged in the original bill of complaint. The amount of refund claimed was erroneous and should have been $305,766.65. This was due to the fact that said claim for refund was made on the basis of there having been included in computing the gross total estate of decedent and the deficiency assessment the sum of $683,563.15 on account of donations by decedent to his

wife, Laura Hayward Howard, whereas the said amount was $670,088.50.

On September 4, 1940, plaintiffs were notified by letter from the Commissioner of Internal Revenue that the claim for refund duly filed by them had been rejected.

18. The result of the exclusion of the foregoing items of rental income from Texas lands, income from stocks and bonds for the period September 29, 1937, to September 29, 1938, life insurance, and donations made by decedent to his wife, Laura Hayward Howard, would be as follows: There would be a net estate subject to tax under the 1926 Act of $1,125,671.46; there would be a net estate subject to tax under the 1932 Act of $1,185,671.46; there would be an allowance of credit against the gross tax under the 1926 Act in the sum of $32,-374.38 for estate or inheritance taxes paid to the states of Louisiana and Texas; and there would be a total net estate tax of $249,640.49. Inasmuch as there was paid by plaintiffs on December 24, 1938, the sum of $222,637.40, in the event that the foregoing items should have been excluded from the computation of the estate of the decedent, the amount that would have been assessed as a deficiency tax was only $27,-003.09, instead of $309,550.75; and the amount of interest on said deficiency would be only $2,178.03, instead of $25,397.02.

### Discussion.

In the instant case the executors availed themselves of the option extended by the estate tax law to value decedent's gross estate as of one year after the decedent's death, and the question which arises is, Should the rents, dividends and interests earned by the estate subsequent to the decedent's death be included in computing the value of the gross estate?

■ The Commissioner held that the income which accrued subsequent to the decedent's death was properly included in the gross estate under the provisions of Article 11 of Regulations 80 and subsection (j) of Section 302 of the Revenue Act of 1926, as added by Section 202 of the Revenue Act of 1935. This precise question was presented to the Supreme Court in the recent case of Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. ——, 132 A. L.R. 1035, and the court held that the regulation was an unwarranted extension of the plain meaning of the statute and could not, therefore, be sustained. It follows from this decision that the following items of income were wrongfully included in computing the gross estate:

(a) Rental income from Texas lands ................... $12,720.83;
(b) Income from stocks and bonds of the estate....... 49,385.85;
(c) Income from donations made by decedent to his wife ................... 31,881.55

The second question which arises is, Should the full adjusted amount of the inter vivos donations made by the decedent to his wife be included within the gross estate under Section 302(d) (1) of the Revenue Act of 1926, as amended by the Revenue Act of 1934, 26 U.S.C.A.Int.Rev. Acts, page 229, because of the power of revocation reserved to the decedent under Article 1749 of the Civil Code of Louisiana?

■ Article 1749 of the Civil Code of Louisiana and the French authorities are full and clear on the point that all donations made by one spouse to the other during marriage are always revocable at the will of the donor. It must therefore be conceded that by virtue of Article 1749 a complete power of revocation is reserved to the decedent. Indeed, it is well settled in Louisiana that the rule of law embodied in this codal article is one founded upon considerations of public policy, and for the preservation of public order from the force of which parties cannot, by their conventions, derogate. It follows that the power of revocation reserved to the decedent by the provisions of Article 1749 must be read into and considered a part of each donation made by the decedent to his wife. The decedent was presumed to know the law, but whether he actually knew of the power of revocation reserved to him, or whether he intended to reserve such a power of revocation is all immaterial since the law reserved it for him. Whatever may have been his knowledge or intent, there is nothing that could have barred his right of revocation had he exercised that power any time prior to his death. Section 302(d) of the Revenue Act of 1926, as amended by Section 401 of the Revenue Act of 1934, provides that there should be included with the gross estate "* * * all property, real or personal, tangible or intangible, wherever situated * * * To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment

thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *."

Plaintiffs contend that the Federal Estate Tax Law has destroyed the right accorded by Louisiana law to spouses to make donations to each other, and has stricken with nullity donations made and complete long before the provisions of the Federal Estate Tax Law were enacted. This precise question was presented in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 370, 77 L.Ed. 748, and the court held that a donation or gift became complete for taxing purposes only when the power to revoke that was reserved had been cancelled. In the course of its opinion the Supreme Court stated:

"While the powers of revocation stood uncanceled in the deeds, the gifts, from the point of view of substance, were inchoate and imperfect. By concession there would have been no gift in any aspect if the donor had attempted to attain the same result by the mere delivery of the securities into the hands of the donees. A power of revocation accompanying delivery would have made the gift a nullity. Basket v. Hassell, 107 U.S. 602, 2 S.Ct. 415, 27 L.Ed. 500. By the execution of deeds and the creation of trusts, the settlor did indeed succeed in divesting himself of title and transferring it to others (Stone v. Hackett, 12 Gray (Mass.) 227; Van Cott v. Prentice, 104 N.Y. 45, 10 N.E. 257; National Newark & Essex Banking Co. v. Rosahl, 97 N.J.Eq. 74, 128 A. 586; Jones v. Clifton, 101 U.S. 225, 25 L.Ed. 908), but the substance of his dominion was the same as if these forms had been omitted (Corliss v. Bowers, supra [281 U.S. 376, 50 S. Ct. 336, 74 L.Ed. 916]). He was free at any moment, with reason or without, to revest title in himself, except as to any income then collected or accrued. As to the principal of the trusts and as to income to accrue thereafter, the gifts were formal and unreal. They acquired substance and reality for the first time in July, 1925, when the deeds became absolute through the cancellation of the power.

"The argument for the respondent is that Congress in laying a tax upon transfers by gift made in 1924 or in any year thereafter had in mind the passing of title, not the extinguishment of dominion. In

that view the transfer had been made in 1917 when the deeds of trust were executed. The argument for the government is that what was done in 1917 was preliminary and tentative, and that not till 1925 was there a transfer in the sense that must have been present in the mind of Congress when laying a burden upon gifts. Petitioner and respondent are at one in the view that from the extinguishment of the power there came about a change of legal rights and a shifting of economic benefits which Congress was at liberty, under the Constitution, to tax as a transfer effected at that time. Chase National Bank v. United States, supra [278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A. L.R. 388]; Saltonstall v. Saltonstall, supra [276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565]; Tyler v. United States, supra [281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758]; Corliss v. Bowers, supra. The question is not one of legislative power. It is one of legislative intention."

Plaintiffs further contend that a distinction exists between a power to revoke expressly reserved and one imposed by law, and cites Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76 and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80 as authority for the distinction for which plaintiffs contend. It will serve no useful purpose to repeat their argument here as the precise contention was presented and correctly decided in Commissioner of Internal Revenue v. Allen, 3 Cir., 108 F.2d 961, 966, certiorari denied, 309 U.S. 680, 60 S.Ct. 718, 84 L.Ed. 1023. In the Allen case the question presented was whether a minor's transfer of property, without valuable consideration in trust for others, made prior to the effective date of the Gift Tax Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 580 et seq., is so inchoate and imperfect, because of the minor's legal right to this fund during minority and for a reasonable period thereafter, as to render the transfer not taxable as a gift until the year in which the minor attained majority and failed to disaffirm. In reaching the conclusion that no distinction exists, under the Gift Tax Act of 1932, between the power to revoke especially reserved and one imposed by law, the court said:

"The argument, that to impose a tax on the transfer when the minor attained her majority and failed to disaffirm, would require that the statute be construed as

having retroactive effect, contrary to the decisions [1] and the Act[2] itself, erroneously assumes that the gift was complete when the minor executed her deed of trust. It was the change of legal rights and the shifting of economic benefits that came about with the termination of the minor's power to revoke 'which Congress was at liberty, under the Constitution, to tax as a transfer effected at that time. * * * The question is not one of legislative power. It is one of legislative intention.' Burnet v. Guggenheim, supra."

In the light of the foregoing it seems clear that the power of revocation reserved to this decedent by the provisions of Article 1749 of the Civil Code prevented the completion of the transfer until the death of decedent, and that the value of all of the donations must be included in the gross estate, since there is no distinction between the taxability of the various donations on the ground of the difference in the dates on which the various donations were made.

Plaintiffs further contend that only one-half of the value of the life insurance policies taken out by the decedent during the existence of the community should have been included in computing the gross estate of decedent. It is conceded that the decedent was married on January 3, 1914, to Laura Hayward Howard and that there was no stipulation between them against the existence of a community of acquets and gains. The two policies in question were taken out in the year 1917. One of the policies was payable to the children of the decedent and the other was payable to the wife of decedent. Both policies provided that the insured should have the right to change the beneficiaries.

The life insurance statements attached to Schedule D, pages a99–a101 of the return show that the premiums on the policies in controversy were paid annually, and this fact was conceded at the trial though not included in the stipulation of facts.

Article 12 of the stipulation of facts recites that "all of the premiums paid on each of said policies were paid by checks of the decedent, Alvin Pike Howard, drawn on bank accounts standing in his name. The decedent was a man of substantial wealth and of substantial income both before and during his marriage. During each year of his marriage his annual income substantially exceeded his annual expenses, and at the time of his death his wealth and income were considerably greater than at the time of his marriage."

The recent case of DeLappe v. Commissioner of Internal Revenue, 5 Cir., 113 F.2d 48 is decisive of this question. In the De-Lappe case the evidence showed that the decedent had taken out certain policies of life insurance during the existence of the marital community and it was stipulated that the premiums thereon had been paid out of community funds. Some of the policies involved in that litigation were payable to his wife and others were payable to his children, and the policies gave the insured the right to change the beneficiaries at will. On the basis of those facts the court held that only one-half the value of each policy should be included in computing the gross estate of the deceased.

The respondent contends that the De-Lappe decision is wrong and that the De-Lappe case is distinguishable from the case at bar because there it was stipulated that the premiums on the policies had been paid out of community funds, whereas no such finding of fact is warranted here on the basis of the facts stipulated. There can be no doubt that the DeLappe decision is the law of this Circuit and must be followed by the District Court, if the admitted facts will support a finding that the premiums on the policies in question were paid out of community funds.

The facts admitted in the stipulation and at the trial are, in the opinion of the court, equivalent to an admission that the premiums were paid out of community funds. It must be conceded that the law of Louisiana is well settled to the effect that the presumption is that all property acquired during the existence of the community belongs to the community, although the purchase be in the name of one spouse only. The legal situation here is exactly the same as if the checks drawn to pay the premiums had been drawn on a joint bank account standing in the names of the decedent and his wife. It is the

---

[1] Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645.

[2] Sec. 501(b) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 580.

settled jurisprudence of this state that a policy taken out by a husband before his marriage on his own life and payable to his estate is the separate property of the husband's estate, but that his separate estate is indebted to the community for all premiums thereon paid during the existence of the marriage. Thus in Succession of Lewis, 192 La. 734, 740, 189 So. 118, 120, the Supreme Court said:

"The court found that premiums on the policy amounting to $909.36 had been paid by the insured after his marriage and that therefore the community was entitled to credit for that amount, to be charged against the separate estate of the deceased. The ruling on both points was correct. Berry v. Franklin State Bank & Trust Company, 186 La. 623, 173 So. 126."

■ The same ruling obtains where the husband has before marriage purchased real estate on credit. This real estate is his separate property, but the community is entitled to credit for any payments made thereon after the marriage. In Jefferson v. Stringfellow, 148 La. 223, 230, 86 So. 774, 777, the court said:

"In so far as any claim by Daler Maxey Davis, individually, is concerned, the proof discloses that Russell Maxey, her former husband, acquired his one-fifth interest in the property on November 17, 1899, and he and Daler were not married until February 21, 1903; so that the title was vested in Maxey when he married and belonged to his separate estate at his death, and not to the community existing between him and Daler; and any payments made thereon during the marriage became a debt in favor of the community against Russell Maxey. R.C.C. art. 2402; Succession of Moseman, 38 La.Ann. 219–221; C.C. art. 2408."

The fact that the payments were made from a bank account standing in the name of decedent does not alter the situation for the reason that this bank account is presumed to be property of the community just the same as though it stood in the name of both spouses. Succession of Ipser, 180 La. 656, 659, 157 So. 380.

The policies in question were taken out more than five years after the date of the marriage of the decedent, and it is admitted that the premiums thereon were paid annually during each year from 1917 up until the date of decedent's death. These facts in and of themselves would seem sufficient to establish that the premiums were paid by the community, and therefore, one-half by the wife.

■ Considering the fact that "the decedent was a man of substantial wealth and of substantial income both before and during his marriage" and that "during each year of his marriage his annual income substantially exceeded his annual expenses, and at the time of his death his wealth and income were considerably greater than at the time of his marriage" an even stronger case is presented for the plaintiffs. It must be conceded that the entire annual income of decedent is community property, regardless of whether it was derived from his separate property or from property of the community. Succession of Andrus, 131 La. 940, 60 So. 623; Succession of Goll, 156 La. 910, 101 So. 263; Articles 2402 and 2405 of the Civil Code. Moreover, it is well settled in Louisiana that the commingling of separate and community funds in a bank account destroys the identity of the separate funds and precludes the contention that property purchased out of said bank account was not community property. Succession of Provost, 190 La. 30, 181 So. 802.

In the case of Succession of McMahon, 176 La. 63, 145 So. 269, there was an attempt by the wife to have declared as her separate funds certain bank credits standing in her name at the time of the death of her husband. In rejecting this contention, the court said: "The presumption is that all property acquired during the existence of the community belongs to the community, although the purchase be in the name of the wife only. Civ.Code, arts. 2402, 2405. To rebut this presumption, the wife must show with legal certainty: First, that the funds constituting the price paid for the property, were her paraphernal funds; secondly, that they were administered by her; and, thirdly, that they were invested by her. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; Otis v. Texas Co., 153 La. 384, 96 So. 1."

■ An affirmative finding that all of the premiums on these policies were paid out of community funds is clearly warranted and the court so finds, and concludes that the instant case falls squarely within the DeLappe decision.

■ In their petition plaintiffs pray that there be judgment reserving unto plaintiffs the right to file a timely claim

for refund and request therein that proper credit be allowed for state estate, inheritance, legacy, or succession taxes, as is provided for in Section 301(c) of the Revenue Act of 1926, as amended by Section 802(a) of the Revenue Act of 1932, upon submission by them of the proof of credit required by Article 9(b) Regulations 80. Section 301(c) of the Revenue Act of 1926, as amended, in effect allows to the executors of this estate a credit not exceeding 80 percentum of the Federal Estate Tax for the inheritance taxes paid by them to the State of Louisiana within four years after the filing of the return. If any one possesses the power to extend the time for the securing of the credits by the plaintiffs, it would seem that the Commissioner of Internal Revenue would have that authority, but be this as it may, it is certain that there is no statute which gives this court jurisdiction to grant plaintiffs' request.

### Findings of Fact.

1. The court adopts the stipulated facts as its findings of fact, and, in addition finds, as was conceded in argument, that the life insurance statements attached to Schedule D, pages a99–a101 of the return show that the premiums on the policies in controversy were paid annually.

2. The court further finds that all of the premiums paid on each of the policies in suit were paid out of community funds.

### Conclusions of Law.

1. The income for one year after death should not have been included in computing the decedent's gross estate where, as here, the executors elect to avail themselves of the option afforded by the Federal Estate Tax Law to value the estate as of one year after date of death rather than at date of death. The following items of income earned by the estate subsequent to decedent's death were wrongfully included in computing the value of the gross estate:

(a) Rental income from Texas lands .................... $12,720.83
(b) Income from stocks and bonds of the estate........ 49,385.85
(c) Income from donations made by decedent to his wife .................... 31,881.55

2. The donations made by decedent to his wife should be included in computing the gross estate of the decedent because of the power of revocation reserved to the decedent under Article 1749 of the Civil Code of Louisiana.

3. There should be included within the gross estate under Section 302(g) of the Revenue Act of 1926 only one-half of the proceeds of insurance policies on the decedent's life, over and above the statutory exemption, where the beneficiaries of the policies were decedent's wife and decedent's children and where the decedent reserved the right to change the beneficiaries.

4. This court has no jurisdiction to reserve to plaintiffs the right to file a timely claim for credit on account of the payment of state estate, inheritance, legacy or succession taxes.

5. Plaintiffs are entitled to judgment against Grady C. Durham, Acting Collector of Internal Revenue, in the sum of $54,-947.77 with interest at the rate of 6% per annum from July 11, 1940, until paid.

6. Plaintiffs are entitled to judgment against the United States of America in the sum of $19,089.13 with interest at the rate of 6% per annum from May 11, 1940, until paid.

7. In all other respects the claim of plaintiffs against the United States of America is rejected.

The clerk is directed to enter judgments accordingly.