**MULLIKIN et al. v. MAGRUDER, Collector of Internal Revenue for District of Maryland.**

**No. 1840.**

District Court, D. Maryland.

June 15, 1944.

Mullikin, Stockbridge & Waters, of Baltimore, Md., for respondent.

Sam'l O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U.S. Atty., of Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this case the executors of Merville H. Carter sue the Collector of Internal Revenue to recover an alleged overpayment of federal estate taxes. Three items are involved. They are (1) a three-eighths interest of the decedent in a partnership of which he was a member at the time of his death on September 5, 1939. This item was valued by the Commissioner of Internal Revenue at $95,768.10, and was included as an asset of the estate over the objection of the executors that it had been completely transferred by the decedent to his son H. LeRoy Carter, by instrument in writing dated April 5, 1929, to be effective on the decedent's death; (2) promissory notes of W. Y. Goldsborough aggregating $4500, and (3) like notes of

Felix V. Goldsborough in the principal amount of $5775, of which one was an accommodation note made by the decedent payable to the order of Felix V. Goldsborough but paid at maturity by the decedent. Items (2) and (3) present only questions of fact; while item (1) presents a question of law which requires careful analysis of the legal effect of the instrument of conveyance. I will discuss these questions in their stated order.

1. *The partnership interest.* I find the following facts from the evidence with respect to this item.

In 1896 Merville H. Carter, the decedent, and his brother, Allan L. Carter, with Henry S. Dulaney and another, formed a partnership known as the Resinol Chemical Company, for the manufacture and sale of special articles produced from trade formulas. The partnership was very successful and made large net profits (without deduction for salaries of the partners) for many years prior to 1929. From 1918 to 1929 these net profits averaged well over $100,000 per year. From 1929 to 1939 the net profits averaged about $75,000 per year.

In 1929 the remaining partners were Merville H. Carter, Allan L. Carter and Henry S. Dulaney. Mr. Dulaney died prior to April 5, 1929, and the interest of his estate was acquired by Allan L. Carter and Merville H. Carter, who continued the business. At that time Merville H. Carter was 72 years of age and a few years before had married a second wife. By his first wife he had two sons. One was an invalid and not engaged in any gainful occupation, and had been financially supported by his father. The other son was H. LeRoy Carter, who was then about 47 years of age, and for many years had been actively engaged in business, being the president of a paving brick company, with a substantial salary. Merville H. Carter then owned a half interest in the partnership, the other half being owned by his brother, Allan. Merville proposed to his son LeRoy that if LeRoy would pay him $25,000 he would give him one-fourth of his interest in the partnership (that is one-eighth of the whole) to be immediately effective, and the remaining three-eighths effective upon the death of the father. LeRoy agreed to this proposition, paid his father from his own moneys $25,000 and the two executed an agreement in writing, dated April 5, 1929, which, after appropriate recitals, continued:

"the party of the first part (Merville Carter) grants, assigns and conveys unto the party of the second part (LeRoy Carter)

(1) one-fourth of all of the right, title and interest of the party of the first part in the partnership of Resinol Chemical Company, same to belong to the party of the second part absolutely;

(2) all of the rest of the interest of the party of the first part in and to the partnership of Resinol Chemical Company at the time of the death of the party of the first part, it being the intention of this section that upon the death of the party of the first part, the party of the second part shall succeed to all the right, title and interest of the party of the first part in and to the Resinol Chemical Company.

"In the event that a corporation shall be formed to succeed to the business of Resinol Chemical Company, the parties of the first and second parts are to receive proportionate amounts of the stock of said corporation, equal to their respective interests in the partnership and upon the death of the party of the first part, the party of the second part shall succeed to all of the right, title and interest in and to the stock owned by the party of the first part in the said corporation."

Allan L. Carter was not a party to this written agreement, and the introduction of a new partner, LeRoy, naturally required a new partnership agreement between the three of them. Therefore on the same day, April 5, 1929, a formal partnership agreement was entered into by the three partners. It provided among other appropriate partnership provisions, that the net profits or net losses should be divided between the parties in the proportion of one-half to Allan L. Carter, three-eighths to Merville H. Carter and one-eighth to H. LeRoy Carter. For the purposes of this case there were two other important provisions as follows:

"7. That at the termination of the partnership, by reason of any cause, a full and accurate inventory shall be prepared and the assets, liabilities and income, both gross and net, shall be ascertained, that the debts of the partnership shall be discharged and all monies and other assets of the partnership then re-

898

maining shall be divided in specie between the parties, as follows:

Allan L. Carter .................... 1/2
Merville H. Carter ............... 3/8
H. LeRoy Carter ................. 1/8

"8. That in the event of the death of the party of the second part (Merville Carter), this partnership shall not determine nor be dissolved, but the party of the third part shall succeed to all of the right, title and interest of the party of the second part in and to the partnership, to hold one-half interest therein in his own name, the same to belong to him absolutely."

Thereafter LeRoy Carter continued as an active partner in the business and gradually withdrew from his other business activity. As already stated the partnership continued to be successful until the death of Merville H. Carter in 1939 and the business has since been continued by Allan and LeRoy Carter who succeeded upon the death of his father to the remaining three-eighths of the latter's interest in the business. The will of Merville H. Carter dated January 19, 1938 with a codicil dated November 29, 1938, made no reference to the testator's interest in the partnership. The executors under the will were his personal attorney, Addison E. Mullikin, a Baltimore lawyer, and his son, H. LeRoy Carter. Mr. Mullikin prepared the agreement of April 5, 1929 between Merville H. Carter and H. LeRoy Carter.

In 1937 a question arose regarding the title to the business and real estate in Baltimore City belonging to the partnership which then stood by virtue of deed dated April 8, 1929 from the heirs of Henry S. Dulaney to Allan L. Carter and Merville H. Carter. The name of LeRoy Carter as a partner did not appear in this deed and Allan and LeRoy then conferred with Allan's attorney, Mr. Charles Ruzicka, with respect to the correctness of the legal title to the property. Mr. Ruzicka requested his legal associate, Mr. James B. Diggs, to prepare the necessary deeds to include in the title the name of H. LeRoy Carter. Mr. Ruzicka or Mr. Diggs or both then inquired what was the exact interest of LeRoy in the partnership and they were given a copy of the agreement between Merville H. Carter and H. LeRoy Carter dated April 5, 1929; but apparently the contemporaneous partnership agreement above mentioned had

been mislaid or forgotten and was not given to Mr. Diggs. Thereupon Mr. Diggs after reading the agreement of April 5, 1929 between Merville and LeRoy, prepared the appropriate deeds to include the name of LeRoy in the title, and he suggested that there ought to also be a separate partnership agreement expressing the respective interests of the partners. He accordingly drew another partnership agreement which was dated June 19, 1937. The deed and the new partnership agreement were drawn by Mr. Diggs to express his legal construction of the agreement of April 5, 1929. When these papers were prepared they were taken to Merville H. Carter, who had not been present at the conference with Mr. Diggs. The reason for the papers was explained to Merville Carter who at once executed them, saying at the time that they were in accordance with his intention.

To perfect the legal title to the real estate the conventional method was adopted of first a conveyance by Allan and Merville Carter to a third person who in turn conveyed back the property to Allan, Merville and LeRoy. In the habendum clause it was stated "the interest of said parties respectively in said partnership being as follows, namely: Allan L. Carter — one-half interest; Merville H. Carter — interest for his life in three-eighths thereof, said three-eighths interest passing to H. LeRoy Carter after the death of Merville H. Carter; H. LeRoy Carter — one-eighth interest."

Separately in the partnership agreement the respective ownerships of the partners were similarly expressed, the language as to Merville H. Carter being—life interest in three-eighths with remainder of said interest to H. LeRoy Carter, and a recital read as follows: "Whereas on or about April 5, 1929, said Merville H. Carter, for and in consideration of the sum of Twenty-five Thousand Dollars ($25,000.00) paid to him in cash by the said H. LeRoy Carter, did sell and assign unto the said H. LeRoy Carter all his interest in said partnership business, reserving, however, unto himself for his life a three-eighths interest in said business, such interest, however, to pass to the said H. LeRoy Carter immediately upon the death of the said Merville H. Carter."

Counsel for the Collector, the defendant in this case, contends that the question of law as to the taxability of the three-eighths

partnership interest cannot properly be affected by the wording of these papers in 1937 because they were executed after the joint resolution of Congress of March 3, 1931, c. 454, 46 Stat. 1516, 26 U.S.C.A. Int. Rev. Acts, page 227, which amended in that respect the Revenue Act of 1926, c. 27, 44 Stat. 9, § 302(c). But the plaintiffs contend that the 1937 papers are properly to be considered because they are merely confirmatory of the 1929 agreement and clear up any ambiguity that may be thought to exist therein. So far as it is relevant or important in this case, I find from the evidence that in drafting the 1937 papers Mr. Diggs was not influenced in any way by verbal statements from any of the parties with respect to the intention of the 1929 agreement, and in fact received none from them, but drew the 1937 papers purely responsively to his interpretation of the 1929 agreement. There was also evidence given by Mr. Mullikin as to his understanding of the intentions of his client, Merville Carter, with respect to the 1929 agreement and of his own understanding of what the client desired. His evidence in effect was consistent with plaintiffs' contention as to the legal effect of the agreement but was objected to by counsel for the defendant for several reasons. In the view that I take of the case, this evidence is really unimportant to the decision.

■ Counsel for both parties agree that the controlling statute here is section 302 of the Revenue Act of 1926, c. 27, 44 Stat. 9, which provides:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death; * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer * * * in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, * * * to alter, amend, or revoke, * * *."

As already indicated, this statute was amended by joint resolution of March 3, 1931, reading:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That the first sentence of subdivision (c) of section 302 of the Revenue Act of 1926 is amended to read as follows:

"'(c) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * under which the transferor has retained for his life or any period not ending before his death (1) the possession or * * * (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

This resolution was not retroactive, Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. Section 302 of the 1926 Act with further amendments is now found in 26 U.S.C.A. Int.Rev.Code, § 811.

The exact question of law that is presented is whether the 1929 agreement between Merville and LeRoy constituted a transfer intended to take effect in possession or enjoyment at or after Merville's death within the meaning of the statute; or whether by the proper construction of the 1929 agreement the transfer of the three-eighths partnership interest then made was "subject at the date of his (Merville's) death to any change through the exercise of a power * * * to alter, amend or revoke, * * *." Although LeRoy paid the substantial sum of $25,000 to his father in consideration for the conveyance made at the time, it is, I understand, not contended by counsel for the plaintiffs that this sum in itself constituted "an adequate and full consideration in money or money's worth" for the whole interest conveyed by the agreement.

The question presented requires a careful analysis of the 1929 agreement in connection with the separate contemporaneous partnership agreement. The plaintiffs contend that the three-eighths interest was not within the statute because it was then completely transferred effective upon Merville's death, as a *vested* interest or remainder in the partnership business. The defendant contends that the agreement did not create

a vested remainder in anything, and that by the proper construction of the agreement Merville Carter did retain during his lifetime power to alter, amend or revoke and thereby defeat the transfer. More specifically, the defendant contends that by the proper construction of the 1929 agreement Merville conveyed "only his interest *remaining* at the time of his death", and this left him free to otherwise dispose of the three-eighths interest in whole or in part during his lifetime. Of course, if this construction is correct, the interest was clearly taxable.

██ I do not think this construction by the defendant of the 1929 agreement between father and son is sound. On the contrary, looking at the situation of the parties at the time and the evident motives for the agreement, the reasonable construction is that Merville fully intended at the time that his son should not only have the present absolute one-eighth interest in the firm, but that he should also succeed to the father's remaining three-eighths upon the latter's death. I think the situation of the parties and the surrounding circumstances, as well as the language of the 1929 agreement itself, negative any idea that the father had any reserved intention to defeat the ultimate succession of the son to a full one-half interest in the business. The idea advanced that Merville was free to defeat this ultimate objective by his voluntary act in disposing otherwise of the whole or a part of the three-eighths interest, seems to me to be entirely repugnant to the meaning of the agreement in the light of the admitted circumstances. I construe the agreement as creating a vested interest in the remaining three-eighths interest *if* the 1929 partnership continued until the death of Merville. See Herold v. Blair, 3 Cir., 158 F. 804, for a somewhat factually similar partnership agreement between a father and son. Furthermore, the successful prior conduct of the business and its essential nature, depending so largely upon profits realized from the manufacture and sale of specialties under formulas, rather than returns from fixed assets, was such that it is highly probable neither of the parties had any expectation that the partnership business would not be continued during the lifetime of Merville.

It is, however, true that the interest dealt with was a partnership interest and the partnership was at will, at least so far as Allan Carter, the third partner, was concerned. We are dealing in this case, therefore, with an interest in property which was not itself specific and permanent in nature (although subject to fluctuations in value), such as real estate or stocks, bonds and other securities, but with the interest in a partnership at will which, of course, was by its very nature subject to the possibility of essential change by subsequent events. The nature and permanence of the three-eighths interest in the partnership must therefore be considered in connection with the contemporaneous partnership agreement of 1929 and particularly paragraph 7 thereof which has been above quoted. It was therein expressly provided that "at the termination of the partnership by reason of any cause" the assets should be liquidated and the net remaining assets after the payment of debts should be divided in specie between the parties as follows: Allan L. Carter, one-half; Merville H. Carter, three-eighths; H. LeRoy Carter, one-eighth. The partnership might have terminated from any one of a number of causes, including the death or optional withdrawal of a partner. Md. Code of 1939, Art. 73A, § 31. If we can imply from the agreement between father and son that neither would voluntarily terminate the partnership by withdrawal during his lifetime, still the death of LeRoy would have legally terminated it, although by the agreement the death of Merville would not. But however this may be, it is very clear that either the death or voluntary withdrawal of Allan would have effected a termination, as he was not a party to the agreement between Merville and LeRoy. We need not speculate as to what would have happened if the partnership had been terminated by the death of Allan L. Carter. It is quite likely that it would have been continued by Merville and LeRoy after settlement with Allan Carter's estate. Nor need we determine what would have been the legal situation under the agreement as to the three-eighths interest if LeRoy had died before Merville, a contingency not expressly provided for in the agreement between father and son.

██ The inescapable conclusion, however, is that the partnership might have terminated for one or more causes during the lifetime of Merville Carter, in which event his three-eighths capital interest in the firm would have been distributable to him. Counsel for the plaintiffs contend that in that event Merville Carter would have

held the proceeds of his three-eighths interest in trust as to the income thereof to himself for life with remainder to LeRoy. But all that it is possible to say in this respect is that the agreement clearly did not make any such affirmative provision, and I am not able to say that such an effect must be supplied by construction. It seems probable that neither Merville nor LeRoy gave any thought to what would happen in such a contingency. It was therefore really a *casus omissus* in the agreement. The agreement was one between father and son who were obviously not dealing with each other as strangers at arms' length. The necessary result is that LeRoy's remainder in the three-eighths interest was legally possible to be defeated, so far as the agreement was concerned, by the happening of a condition subsequent. See Herold v. Blair, supra (headnote).

Before the decision of the Supreme Court in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, it is probable that the question here presented would have been decided in favor of the taxpayers, but I agree with counsel for the Collector that the decision here must be controlled by that recent case, if it is applicable. Before the Hallock case, transfers *inter vivos* which created *vested* remainders in a grantee were not within the scope of section 302 of the Revenue Act of 1926, May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; while transfers of merely *contingent* remainders were within the statute. Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996. There was, however, a third class of cases where the transfers according to property law constituted what were known as vested remainders subject to be *divested* by some condition subsequent. And in a number of cases prior to Helvering v. Hallock under varying conveyancing language, the Supreme Court had held such transfers not within the statute. Helvering v. Hallock overruled this latter class of cases and held transfers subject to be so defeated by conditions subsequent within the statute. The cases are so fully reviewed in Helvering v. Hallock that it is quite unnecessary to attempt further discussion of them here.

Whether the Hallock case went further than this by reason of some of the expressions in the opinion, it is not necessary here to determine. Circuit Judge Learned Hand, speaking for the Second Circuit, thinks not, on reasoning which seems very clear and convincing. See Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477, 478; Helvering v. Proctor, 2 Cir., 140 F.2d 87, 88; and Van Vranken v. Helvering, 2 Cir., 115 F.2d 709, 710, certiorari denied 313 U.S. 585, 61 S.Ct. 1095, 85 L.Ed. 1541. There is a contrary view which has also recently received some judicial support, to the effect that the Hallock case has in effect overruled May v. Heiner. See dissenting opinion of Circuit Judge Frank in Helvering v. Proctor, supra. Of course if this view is to ultimately prevail, it seems entirely clear that the partnership interest here involved would be taxable to the estate of the decedent. May v. Heiner presented the case of a transfer of a vested remainder subject to one or more life estates. It was held not taxable. The Congressional resolution of 1931 expressly provided that transfers effective only after reserved life estates were to be taxable; but the resolution was held not retroactive in Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. If both May v. Heiner and Hassett v. Welch have now in effect been overruled by Helvering v. Hallock, then it must follow that the item here involved was taxable because it is the express contention of the plaintiffs that the 1929 agreement as confirmed by the 1937 papers did exactly reserve a life estate in the grantor with remainder to the grantee.

This case differs in several respects from many of the cases which have arisen under section 302 of the 1926 Revenue Act. The subject matter of the transfer is a partnership interest and not specific property. However, this is immaterial because the statute includes "all property, real or personal, tangible or intangible." Again, most of the cases have dealt with conveyances creating trusts in property while the agreement in this case was a simple business arrangement respecting a partnership interest. There is no difficulty in construing the language of the agreement to the extent that it makes affirmative provisions, and the difficulty that exists in the case arises from the provisions of the contemporaneous partnership agreement providing for the contingency of termination of the partnership. Nor is there any question as to the nature of the transfer with respect to whether it was testamentary in character, other than what arises from the very nature of the agreement, that the decedent retained beneficial life interest in his three-eighths of

the partnership during his life, unless the partnership was sooner terminated. Then again, the grantee paid the very substantial sum of $25,000 for the interest transferred to him although the plaintiffs here do not contend the payment of that sum itself took the case out of the statute by reason of the phrase "except in case of a bona fide sale for an adequate and full consideration in money or money's worth." And in this connection it is also to be noted that the transfer of the two interests, one-eighth absolutely and presently effective, and three-eighths to be effective upon the grantor's death, were both jointly and not severally transferred and there was one single indivisible consideration for the transfer. There is still another difference in that the condition subsequent inherent in the nature of the agreement was not made expressly and affirmatively by the grantor by reservation of possibility of a reverter to himself or by a definitely retained interest adverse to the principal of the remainder, except for the provision in the partnership agreement of 1929 for distribution to the partners in specie in event of termination of the partnership (before the death of Merville).

But despite these differences I am forced to the conclusion that there inhered in the transaction, by virtue of the contemporaneous partnership agreement and the applicable Maryland law affecting partnerships at will, a condition subsequent which, if it had occurred in the lifetime of the grantor, would have resulted in the reversion to the grantor of the proceeds of the three-eighths interest. In other words, the nature of the whole agreement was such that the transfer of the three-eighths interest was by the agreement made vested and effective in the grantee only *if* the partnership continued until the death of the grantor. This is the "Achilles heel" of the taxpayers' position in this case. And it is by reason of this legally existing condition subsequent that I hold the case is governed by Helvering v. Hallock. It is not so much because the grantor intentionally and affirmatively reserved to himself this right of re-capture of the three-eighths interest during his lifetime, but rather because the nature of the transaction with respect to the partnership interest made it subject by operation of law, and by section 7 of the 1929 partnership agreement, to the happening of the condition subsequent. And it was only the death of the grantor that effectively ended the legal possibility of the defeat of LeRoy's ultimate enjoyment of the remainder by the condition subsequent. It has also been held that a transfer subject to defeat by law, even though not by affirmative condition of the grant, is nevertheless within the taxing statute. Howard v. United States, D.C.La., 40 F.Supp. 697, 702, affirmed 5 Cir., 125 F.2d 986; Commissioner v. Allen, 3 Cir., 108 F.2d 961, although these cases were of a different nature from the instant case. "A string or tie supplied by a rule of law is as effective as one expressly retained in the trust indenture." Paul, Fed. Estate & Gift Taxation, Vol. I, § 723, p. 368.

My conclusion of law, therefore, as to this item in controversy is that it was taxable. No question has been presented as to the amount of the valuation as made by the Commissioner.

2. *The promissory notes of W. Y. Goldsborough, aggregating $4500.* As to this and the succeeding item of a similar nature, the question presented is purely one of fact as to the proper value of the items respectively as of the time they were valued by the Commissioner. The Commissioner valued the notes at their par or principal amount. The burden of proof is on the taxpayers to show error in this respect.

I have no difficulty in finding that the taxpayers have met the burden of proof with respect to the notes of W. Y. Goldsborough. In the administration of the decedent's estate in the Orphans' Court of Baltimore City, these notes were returned by the executors as "desperate", and they were returned as of no value in the federal estate tax return. The evidence convincingly shows that the notes were in fact of no value at the time. W. Y. Goldsborough was a resident of Baltimore City employed as a salesman for a liquor dealer. His salary was about $100 a week but it was practically not successfully attachable. At the time he had many outstanding and unpaid judgments against him amounting to about $19,000. The debtor had no discoverable assets at the time of any substantial amount. The executors made due but unsuccessful efforts to collect some part of the debt. Several years later the business in which W. Y. Goldsborough was engaged and in which he apparently had a small interest, became much more prosperous and his income increased. This enabled him to negotiate a loan from a bank and apply the proceeds in compromise settlement for a comparatively small

percentage of most, if not all, of the judgments against him. In this way the executors of the decedent finally realized $1675 in full discharge of the notes. But this was several years after the decedent's death. It seems to be agreed by counsel, and I have found nothing to the contrary, that this subsequent realization in part of the principal of the notes does not itself apply retroactively with respect to the time as of which they were to be valued under the Act. Guggenheim v. Helvering, 2 Cir., 117 F.2d 469, 472, certiorari denied 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499; Camp v. United States, 4 Cir., 44 F.2d 126; Whitlow v. Commissioner, 8 Cir., 82 F.2d 569; Paul, supra, Vol. II, §§ 18.11 and 18.43. Of course the fact that ultimately something was realized on the claim is evidence for consideration as bearing on the value of the notes at the earlier time; but I am satisfied from the evidence as a matter of fact that the notes were really worthless at that time. I therefore find that the item in the amount of $4500 should be eliminated from the valuation of the estate.

■ 3. The question as to the *notes of Felix V. Goldsborough in the principal amount of $5775* presents a little different situation. One of these notes in the amount of $1275 was a note made by the decedent payable to the order of Felix V. Goldsborough and apparently by him endorsed and discounted, but the note was subsequently paid at maturity by the maker. It was an accommodation note. The executors endeavored to collect the notes from Felix V. Goldsborough unsuccessfully. He took the position that he had made a settlement and full payment to the decedent of all outstanding obligations, including these notes. He produced for the inspection of their counsel a paper said to have been in the handwriting of the decedent, subsequent in date to the date of the notes, reciting the payment of a comparatively small sum of money to the decedent and acknowledgement that it satisfied the whole indebtedness due from Felix V. Goldsborough to the decedent. The executors were not personally satisfied that the notes had been in fact fully paid but they considered that litigation would be practically unsuccessful and therefore did not bring suit upon the notes. It further appeared that there had been numerous financial transactions between the decedent and Felix V. Goldsborough, and there were no available records kept by the decedent which threw any light upon the status of the accounts between him and Goldsborough. It further appeared that the executors had the approval of the other beneficiaries of the estate that suing on the notes would be a waste of time and expense. At the trial here, Felix V. Goldsborough testified as a witness that while he was financially able to pay the notes at the time, he refused to do so on the ground that he had in fact paid them in the final settlement with the decedent and that he had simply neglected to demand a return of the notes. He also said that he had had many financial transactions with the decedent and from time to time received notes from him for the purchase of certain stocks or other securities. He was unable to produce the settlement paper above referred to but stated that he had years before shown it to counsel for the executors. He was not able to produce or make a full and detailed accounting of his various transactions with the decedent. His testimony was perhaps not very satisfactory or convincing as to his position but, of course, he was not a party to the case on trial.

In view of this rather unsatisfactory evidence, I was inclined at the trial to think that probably the taxpayers had not met the burden of proof to show that the notes were worthless. They had been valued by the Commissioner at their principal sum. But on further consideration, I have reached a different conclusion. It has frequently been explained that taxation is a highly practical matter. It is, I think, sufficiently clear from this evidence that these notes were practically of no value to the estate. Nothing has been realized on them. I therefore find for the taxpayers as to this item.

In view of the foregoing, the plaintiffs in this case will be entitled to judgment for an amount which can be calculated by agreement of counsel, and appropriate form of judgment submitted in due course.