**HOWARD et al. v. UNITED STATES et al.**

**UNITED STATES et al. v. HOWARD et al.**

**Nos. 10061, 10124.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 6, 1942.

Rehearing Denied April 6, 1942.

Esmond Phelps, of New Orleans, La., for appellants Howard.

Arthur A. Moreno, of New Orleans, La., for Amicus Curiæ.

Milford S. Zimmerman, J. Louis Monarch, and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Robert Weinstein and J. Skelly Wright, Asst. U. S. Attys., both of New Orleans, La., for the United States and another, appellees.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This action was filed by the executors of Howard, a life long resident of Louisiana, to recover money paid under protest as federal estate taxes. Each side has appealed from separate portions of the lower court's judgment.

The appeal of the executors is from that portion of the judgment assessing estate taxes against them in respect to certain gifts inter vivos made by the decedent to his wife prior to 1926. Though the donor alienated the property as completely as he could, it was the opinion of the court below that the gifts at all times were revocable at the option of the donor by virtue of Article 1749 of the Civil Code of Louisiana, and that the gifts, being incomplete at the time of his death, remained the property of the decedent for estate tax purposes.

Article 1749 provides that all donations made between married persons, during marriage, though termed inter vivos, shall always be revocable. Section 302(d) (1) of the Revenue Act of 1926, as amended in 1934, which was in force at the time of Howard's death in 1937, included in the estate of the decedent, as property belonging to him and subject to the estate tax, all property owned by the decedent and trans-

ferred by him where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power by the decedent to alter, amend, revoke, or terminate.[1]

All of the transfers in question were made in Louisiana, conveyed property in that state, and were subject to the laws thereof. Said article 1749 operates as a limitation upon every transfer of property by gift from a husband to his wife during the marriage state as effectively through statutory enactment as by express contract provision.[2] Whether this power resulted from the intentional act of the donor or was reserved to him by operation of law, the fact remains that the gifts constituted transfers subject, at the date of the decedent's death, to change in enjoyment through the exercise of a power vested in the donor. Commissioner v. Allen, 3 Cir., 108 F.2d 961.

The cases of Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76, and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, are relied upon in support of the contention that Section 302(d) distinguishes between a power to revoke derived from the donor's own act, and an identical power vested in him by state law. We do not so construe those cases. The Helmholz case involved a gift in trust that, under the state law and the provisions of the trust indenture, was terminable by the joint act of all the beneficiaries. In White v. Poor the declaration of trust could be terminated by the concerted action of the trustees. The declarant resigned as trustee in 1920, and was reappointed in 1921 by the written nomination of the remaining trustees. Her power to revoke, therefore, was attributable to the action of the other trustees, not to a power vested in her as settlor of the trust.

The revenue statute does not create any distinction as to the source of the power to revoke. It has been uniformly construed to operate alike upon all gifts rendered incomplete by the reservation in the donor of a power to revoke.[3] We think

[1] 26 U.S.C.A. § 811(d) (1), 48 Stat. 752.

[2] Succession of Hale, 26 La.Ann. 195; Cousin v. St. Tammany Bank & Trust Co., 146 La. 393, 83 So. 685; Succession of Waldo, 156 La. 684, 101 So. 21; Laurent, Cours De Droit Civil, Vol. 2, page 329.

[3] Corliss v. Bowers, 281 U.S. 376, 50 S. Ct. 336, 74 L.Ed. 916; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Witherbee v. Commissioner, 2 Cir., 70 F.2d 696; Commissioner v. Chase National Bank, 2 Cir., 82 F.2d

these gifts fall squarely within the terms of the statute, and were proper subjects of the estate tax.

We have been cited no authority, and we are aware of none, to the effect that the Revenue Act has no application to property otherwise. subject to the tax because the taxpayer is powerless to deal therewith in a manner that will place it beyond the coverage of the Act. Weil v. Commissioner, 5 Cir., 82 F.2d 561, 563, which is relied upon as authority, simply holds that a taxpayer must, ordinarily, do all that his power and the nature of the property permit in parting with ownership and dominion in order to make a gift irrevocable. It does not hold that, where a taxpayer does all he can to make an irrevocable gift, and the gift then remains revocable upon the exercise of a power vested in the donor, an irrevocable gift has been made.

▪ The tax levy in this case is not upon those transfers made by the decedent prior to 1924. The extinguishment by death in 1937 of the power to revoke completed the transfer to which the tax was applied. That this transfer at death was a taxable event, and that the levy upon that transfer in 1937 was neither a retroactive nor an unconstitutional application of the statute, has been settled beyond question.[4]

▪ The executors contend in the alternative that, of the property given, only that of a value of $347,925.88 is subject to the tax, because only this amount of the identical securities donated remained in unaltered form in the hands of the donee on the date of decedent's death; that the power of revocation exercisable by the donor was effective only as to the particular thing given, and had previously ceased to exist as to all securities that were changed in form. This contention is unsound for the reason that the statutory power of revocation is enforceable so long as the substance of the donation is tangible or is susceptible of identification.[5] That the entire amount assessed was susceptible of identification in 1937 is evidenced conclusively by the recitation in the stipulation of facts that the disputed assets either were acquired by the donee by purchase with cash given to her by her husband, or were acquired by the redemption, sale, or exchange of other securities given by him to her. It therefore appears that the Commissioner's assessment of estate taxes in respect to the donations made by the decedent to his wife during coverture was properly sustained by the court below, and that, on the appeal of the executors, the judgment should be affirmed.

The appeal of the Commissioner originally presented two questions. It is conceded that the first was decided in favor of the taxpayer in Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035, and the point has been abandoned. The remaining question is whether certain policies of insurance on the life of Howard, purchased during wedlock, were community property or were the separate property of the decedent.

Howard was married in 1914 to the wife who survived him. The policies were taken out in 1917, and the annual premiums thereon were paid by checks drawn by Howard upon a bank account standing in his name. He was a man of considerable wealth and income before his marriage, and thereafter his wealth steadily increased, and his income each year substantially exceeded his expenditures. These facts were stipulated, and no further proof was submitted on the issue of the ownership of the policies.

This being a suit to recover taxes wrongfully collected, the executors admit that upon them rested the burden of proving that the policies were community property; and they contend that the facts agreed upon, aided by two legal presumptions created by Louisiana statutes, satisfied that burden. Articles 2402 and 2405 of the Civil Code of Louisiana create disputable presumptions that all property acquired during the existence of the community belongs to the community, and that property purchased during the marriage in the name of one spouse only, by the use of funds deposited to the credit of that spouse only, is community property.[6]

The Government admits that a community of acquets and gains existed between

---

157, 158; Hesslein v. Hoey, 2 Cir., 91 F.2d 954.

[4] Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565; Burnet v. Guggenheim, supra; Estate of Sanford v. Commissioner, supra; Rasquin v. Humphreys, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77.

[5] Succession of Hale, 26 La.Ann. 195.

[6] Succession of McMahon, 176 La. 63, 145 So. 269; Succession of Ipser, 180 La. 656, 157 So. 380; Succession of Lewis, 192 La. 734, 740, 189 So. 118.

Mr. and Mrs. Howard, and that, if the presumptions of Louisiana law are applicable to this case, only one-half of the net taxable value of the proceeds of the policies is subject to the estate tax under the holding in the Lang and De Lappe cases.[7] It contends that these presumptions under Louisiana law may not be used to help sustain the burden of proof upon the executors, for the reason that the federal revenue laws are not subject to state control or limitation, in the absence of an express provision in the federal statute providing therefor.[8] It is said that the general purpose of those laws, to establish a nation-wide scheme of uniform taxation, otherwise would be defeated.[9] The question, therefore, turns upon whether or not the federal court may apply these presumptions in a case like this where the issue depends upon the ownership of property within the State of Louisiana.

■■ The operation of these presumptions is only to supply an inference of fact from other facts in evidence.[10] The facts stipulated by the parties in this case take the place of evidence, and supply the bases for two inferences: (1) that the policies, being acquired during the marriage state, were community property; (2) that the premiums paid thereon were derived from community funds deposited in bank to the checking account of the husband. These inferences merely cast upon the opposite party the duty of producing some evidence to the contrary, and would yield readily to such evidence, but none is offered. They are not arbitrary inferences capriciously drawn by legislative fiat;[11] they are legal presumptions based upon human experience, and the constitutionality of the statutes creating them is not assailed in their ordinary application to community property rights in Louisiana. The contention is that the presumptions cannot be applied in the statutory action to recover taxes erroneously or illegally paid, because their application would conflict with the substantive rule of law as to the burden of proof that is upon the plaintiff in such cases.

■ This contention overlooks the distinction between the burden of proof and the necessity of producing evidence to meet the proof already produced.[12] A question of burden of proof may amount to a federal question when intimately involving substantial rights under a federal statute, as in Central Vermont R. Co. v. White[13] and New Orleans & N. E. Railroad Co. v. Harris.[14] These actions were tried in the state courts of Vermont and Mississippi, respectively. There was no question of whether a federal court should apply the same rules of evidence and the same presumptions of law that control the procedure in state courts of the forum. The court held that Congress, in passing the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., intended that it should be construed in accordance with the federal decisions on the subject of burden of proof, which required the plaintiff to prove negligence but not freedom from fault. Both decisions were before Erie Railroad Co. v. Tompkins,[15] and the question arises whether their foundations have been undermined by the Tompkins case; but we need not go into that, because this action has a different origin; it arises under a different statute; and it involves no conflict of state and federal laws upon the subject of burden of proof.

■ This suit contains two separate actions brought and tried together without objection: one against the United States (the Collector being out of office when suit was filed), jurisdiction being derived from 28 U.S.C.A. § 41(20); the other against the acting collector for the same district, jurisdiction being derived from 28 U.S.C.A. §

---

[7] Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; De Lappe v. Commissioner, 5 Cir., 113 F.2d 48.

[8] Central Vermont Ry. v. White, 238 U.S. 507; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L. Ed. 585.

[9] Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L. Ed. 913.

[10] Mobile, J. & K. C. R. Co. v. Turnip-

seed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas.1912A, 463.

[11] Cf. Western & Atlantic R. Co. v. Henderson, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884, distinguishing Mobile, J. & K. C. R. Co. v. Turnipseed, supra.

[12] Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419.

[13] 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252.

[14] 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167.

[15] 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

41(5). Separate judgments were entered against each defendant. The right to sue the United States is limited to specific cases in respect to which the party would be entitled to redress if the United States were suable. The right to sue the Collector or the United States is subject to certain conditions with reference to filing the claim and the suit within the limited periods prescribed in Section 3226 of the Revised Statutes, as amended.[16] By these statutes the United States waived its sovereign immunity from suit,[17] and did away with the necessity of payment under protest in all actions for the recovery of taxes, but no statute has enlarged the Collector's common-law liability to suit.[18] The taxpayers have a common-law right recognized by statute to sue the Collector in a court of the United States for the recovery of taxes wrongfully collected.[19]

This action, whether against the Collector or the United States, is in the nature of an action for money had and received.[20] There is no difference in essential characteristics between the action against the Collector and that against the United States. If the claim is against the United States, its nature is the same whether or not it exceeds $10,000 in amount.[21] In each instance the action is predicated upon the theory that the defendant has received money of the plaintiff, which in equity and good conscience should be refunded.[22]

The burden of proof is the same whether the action is against the Collector or the United States, and regardless of the amount to be recovered. There is no reason to ascribe to Congress an intention to place upon the plaintiff a greater burden of proof than that obtaining at common law in actions of the same nature.[23] There is no contention that the defendant may not invoke the presumption of validity that arises as soon as it appears that the money was exacted by the tax collector under color of his office.[24] This is not a statutory presumption; it is as old as the maxim omnia præsumuntur rite et solemniter esse acta; it does not increase the burden of proof, because the evidence neces-

[16] Section 3772 of the Internal Revenue Code.

[17] Dooley v. United States, 182 U.S. 222, 228, 21 S.Ct. 762, 45 L.Ed. 1074; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; Christie-Street Commission Co. v. United States, 8 Cir., 136 F. 326; Crossett Timber Co. v. United States, D.C., 38 F.2d 814.

[18] Lowe Brothers Co. v. United States, 304 U.S. 302, 306, 58 S.Ct. 896, 82 L.Ed. 1362.

[19] Routzahn v. Willard Storage Battery Co., 6 Cir., 65 F.2d 89, 92, reversed on other grounds, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859.

[20] United States v. Jefferson Electric Co., 291 U.S. 386, 402, 54 S.Ct. 443, 78 L.Ed. 859; Stone v. White, 301 U.S. 532, 534, 535, 57 S.Ct. 851, 81 L.Ed. 1265.

[21] 28 U.S.C.A. § 41(20).

[22] Elliott v. Swartwout, 10 Pet. 137, 9 L.Ed. 373, which allowed a personal action against the Collector. But after an act requiring collectors to pay over such moneys it was held that the personal liability was gone. Cary v. Curtis, 3 How. 236, 11 L.Ed. 576. Later statutes reinstated the action against collectors. Smietanka v. Indiana Steel Company, 257 U.S. 1, 4, 42 S.Ct. 1, 66 L.Ed. 99. The history of this legislation is further summarized in Moore Ice Cream Co. v. Rose, 289 U.S. 373, 380, 53 S.Ct. 620, 77 L.Ed. 1265. The broad language in this case, however, is to be taken with caution in view of the earlier case of Sage v. United States, 250 U.S. 33, 37, 39 S.Ct. 415, 63 L.Ed. 828, where it was held that a judgment against the Collector is not technically one against the United States and that the latter would not be privy to such a judgment.

[23] "It is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession, without showing that it has not been accounted for, and any facts, circumstances, or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence to support the action." 2nd R.C.L., § 34, p. 779, citing: 52 Am. Dec. 752 note; Merchants' Bank v. Rawls, 7 Ga. 191, 50 Am.Dec. 394; Ainslie v. Wilson, 7 Cow., N.Y., 662. 17 Am. Dec. 532 and note; Hathaway v. Burr, 21 Me. 567, 38 Am.Dec. 278; McCrea v. Purmort, 16 Wend., N.Y., 460, 30 Am. Dec. 103.

[24] United States Bank v. Dandridge, 12 Wheat. 64, 69, 70, 25 U.S. 69, 70, 6 L.Ed. 552; Strother v. Lucas, 12 Pet. 410, 37 U.S. 410, 9 L.Ed. 1137; United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184.

sary to sustain the burden will rebut the presumption.

The burden of proof upon the plaintiffs undoubtedly has been met if the bank account from which the premiums were paid was community property. We have here a case of successive presumptions rather than conflicting presumptions.[25] The plaintiffs started out in the court below with the burden of proving that the defendants had received money from them which in equity and good conscience should be refunded. As soon as it appeared from the stipulation that the money was exacted for taxes by duly constituted taxing officers, the presumption of validity immediately attached. When it further appeared that the policies were acquired by the deceased, a citizen and resident of Louisiana, after he had been married several years; that he was a man of considerable wealth whose income exceeded his expenditures; and that the premiums had always been paid during the existence of the community from funds on deposit to his separate account; when these facts appeared, the law of Louisiana compelled the inference that the money so deposited was community property, and no evidence was offered to rebut these facts or the inference therefrom. The facts that the policies were acquired during wedlock and that the premiums were paid with community funds established that only half of the premiums were paid by the decedent and that only half of the insurance should have been included in his gross estate.[26] This proved beyond contradiction that one-half of the tax upon the insurance was illegally or erroneously collected; and this fact rebutted the presumption of validity above mentioned and met the burden of proving the illegality of the tax,[27] the only fact in addition to those stipulated necessary to make out the plaintiffs' case.

There being no conflicting federal rule or statute and no greater burden of proof upon the plaintiffs than in similar actions at common law, it is not necessary to decide whether these state statutory presumptions belong to substance or procedure or partake of the nature of both. The result is the same, since the determinative issue relates to community property rights in Louisiana and was presented to a United States district court sitting in that state. If they are substantive rules of law, the district court was bound to apply them in determining local property rights.[28] If they are rules of evidence,[29] they are controlling because of the relation between the right of property and the remedy necessary to redress the wrongful invasion of such right.[30] If they

---

[25] Wigmore on Evidence, 2d Ed., § 2493. See also Sections 2490 and 2491 as to the legal effect of a presumption and as to the distinction between presumptions of law and so-called presumptions of fact. See, also, Greenleaf on Evidence, Vol. 1, Sec. 44.

[26] For estate tax purposes, the statute provides for the inclusion in the gross estate of the excess over $40,000 of insurance taken out by the decedent upon his own life payable to beneficiaries other than his own estate. 26 U.S.C.A. § 411(g). See also Articles 25, 26, and 27 of Treasury Regulations 80 of 1938, and interesting amendment thereof, dated Jan. 10, 1941, by Treasury Decision 5032, 1941-3 Internal Revenue Bulletin 13, as follows:

"Such insurance is not considered to have been so taken out, even though the application was made by the decedent, if no part of the premiums or other consideration was paid either directly or indirectly by him. Where a portion of the premiums or other consideration was actually paid by another and the remaining portion by the decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the proportion that the payments therefor made by him bear to the total amount paid for the insurance."

[27] Lang v. Commissioner, 304 U.S. 264, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; De Lappe v. Commissioner, 5 Cir., 113 F.2d 48.

[28] R.S. § 721, 28 U.S.C.A. § 725.

[29] Heiner v. Donnan, 285 U.S. 312, 329, 52 S.Ct. 358, 76 L.Ed. 772, holding that a rebuttable presumption is a rule of evidence that has the effect of shifting the burden of proof; but compare New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218, which says that the presumption against suicide is not evidence and may not be given the weight of evidence. For what happened to this case after reversal, see, 8 Cir., 106 F.2d 375, certiorari denied 308 U.S. 621, 60 S.Ct. 294, 84 L.Ed. 518. Cf. 25 Iowa Law Rev. 375; 17 N.Y.U.Law Rev. 466.

[30] Rule 43 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Ex parte Fisk, 113 U.S. 713, 720, 5 S.Ct. 724, 28 L.Ed. 1117; Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U.S. 221, 23 S.Ct. 517, 47 L.Ed. 782; Burns Mort-

994.

are merely rules requiring the party against whom they operate to go forward with the evidence or have the issue decided against him, they formerly might have been applied under the Conformity Act,[31] and, if that act has been repealed or superseded by the Federal Rules of Civil Procedure,[32] their application by the court below may be upheld under rule 83, since said rules of civil procedure contain no specific provision with reference to presumptions of law.

■ State rules of property must be applied and enforced in proceedings under the revenue statutes in the absence of a conflicting federal law, treaty, or constitutional provision on the subject. Differences in state laws so to be applied do not disparage the geographic uniformity of taxation requisite to constitutionality.[33] Therefore, since the ultimate tax question here depends upon the ownership of the funds on deposit, and since the law of Louisiana is controlling,[34] the disputable presumptions above mentioned are so bound together with local property rights that the failure to apply them would result in serious interference with the local substantive law.[35]

■ It being stated in the taxpayer's brief that an error is conceded to have been made in the computation of the amount of the judgment below, which should be corrected if erroneous, the judgment of this court will be left open for a period of twenty days from the filing of this opinion to permit the parties to file with the clerk a stipulation in regard to the modification of the judgment in accordance therewith. As modified, the judgment of the court below will be affirmed.

gage Co. v. Fried, 292 U.S. 487, 54 S. Ct. 813, 78 L.Ed. 1380, 92 A.L.R. 1193; Dobie's Federal Procedure, page 623. Cf. 45 Yale Law Journal, page 627.

[31] R.S. § 914, 28 U.S.C.A. § 724.

[32] Sibbach v. Wilson & Co., 312 U.S. 1, 10, 655, 61 S.Ct. 422, 85 L.Ed. 479; The Advisory Committee's note to rule 2. Cf. The Tompkins Case and the Federal Rules, by Judge Clark, 1 F.R.D. 417, 422.

[33] Head Money Cases (Edye v. Robertson), 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798; Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Lang v. Commissioner, supra.

[34] Succession of Andrus, 131 La. 940, 60 So. 623; Succession of Provost, 190 La. 30, 181 So. 802.

[35] McNiel v. Holbrook, 12 Pet. 84, 9 L.Ed. 1009; Sims v. Hundley, 6 How. 1, 12 L.Ed. 319; Vance v. Campbell, 1 Black 427, 17 L.Ed. 168; Wright v. Bales, 2 Black 535, 17 L.Ed. 264; Ryan v. Bindley, 1 Wall. 66, 17 L.Ed. 559; Claiborne County v. Brooks, 111 U.S. 400, 4 S.Ct. 489, 28 L.Ed. 470; Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 5 S.Ct. 119, 28 L.Ed. 708; Bucher v. Cheshire R. Co., 125 U. S. 555, 8 S.Ct. 974, 31 L.Ed. 795; Gormley v. Clark, 134 U.S. 338, 10 S.Ct. 554, 33 L.Ed. 909; Detroit v. Osborne, 135 U.S. 492, 10 S.Ct. 1012, 34 L.Ed. 260; Williams' Federal Practice (2nd Ed.), § 11, pp. 308, 309, 310; Paul's Selected Studies in Federal Taxation, pp. 40–52. Cf. Restatement, Conflict of Laws, Sec. 595 (2): "The law of the forum governs presumptions and inferences to be drawn from evidence."