127 So.2d 263 (1961)
SUCCESSION of Mrs. Eloria Zinsel Spahos BLADES.
No. 56.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 1961.
Rehearing Denied March 13, 1961.
Certiorari Denied April 24, 1961.
*264 Arthur V. Flotte, Frank L. Micholet, Peter L. Bernard, Jr., Paul V. Cassisa, Ernest J. Robin, and Gordon Hyde, New Orleans, for plaintiff-appellee and defendants-appellees.
Weber & Weber, Clark W. Taylor, Baton Rouge, for defendant-appellant.
Before McBRIDE, YARRUT and SAMUEL, JJ.
SAMUEL, Judge.
The decedent herein, Mrs. Eloria Zinsel Spahos Blades, was married three times, first to William E. Blades, second to Nicholas J. Spahos, and thirdly by remarriage to her first husband, William E. Blades, on December 30, 1944, which last marriage ended in divorce on April 20, 1948. Mrs. Blades died testate on June 30, 1953, and her succession has been opened.
This is a declaratory action by the dative testamentary executor of the succession, against the divorced husband Blades and the children of the first two marriages, seeking a judgment recognizing as paraphernal certain immovable property (a lot of ground, with a duplex thereon, in the City of New Orleans) involved in the succession. Blades has taken this appeal from a judgment decreeing that said property was the separate property of the decedent and formed part of her separate estate.
On December 12, 1944, the decedent had submitted an offer of $7,900 cash for the purchase of this property. The offer was accepted on December 13, 1944, at which time she deposited the sum of $790 in cash on the purchase price.
On December 29, 1944, decedent opened a checking account with the Carrollton Branch of the Whitney National Bank in New Orleans in the name of Mrs. Eloria Zinsel and deposited therein the sum of $7,310. The next day, December 30, 1944, she married the appellant William E. Blades. She acquired title to the property in the name of Mrs. Eloria Zinsel by a notarial cash act of sale on February 15, 1945, in which act she declared that she was purchasing the property as her own separate and paraphernal real estate under her own use and administration and that all of the funds used in the purchase were separate and paraphernal having been acquired prior to her marriage and from the operation of a rooming house, which said funds had been deposited in her separate bank account in the Whitney National Bank prior to her last marriage to Blades. Blades did not sign, nor did he make any appearance in, the act of sale.
The balance of the purchase price after the deduction of the deposit of $790, being the sum of $7,110, was paid by the decedent's certified check, dated February 7, 1945, in that amount and to the order of the vendor of the property, out of the aforesaid checking account. The check amount of $7,110 was deducted from the balance on deposit on February 7, 1945, and on that same date a deposit of $95 was made so that the first balance shown on the bank statement introduced in evidence was $7,310 on December 29, 1944, the date of the opening of the account, and the second balance shown, on February 7, 1945, was $295. There was little other activity in the account and all of this other activity, consisting of three deposits totaling $261.57 and six withdrawals, was subsequent to February 7, 1945. The account was closed on April 4, 1945.
Property purchased in the name of either spouse during the marriage and the existence of the community of acquets and gains is presumed to be a part of that community. LSA-Civil Code, Arts. 2334, 2402, 2405; Succession of Land, 212 La. 103, 31 So.2d 609; Succession of Ipser, 180 La. 656, 157 So. 380; Houghton v. Hall, 177 La. 237, 148 So. 37. The status of such property is fixed at the time of its purchase. Butler v. Burks, La.App., 99 So.2d 180; Joseph v. Travis, La.App., 99 So.2d 548; Succession of Franek, 224 La. 747, 70 So.2d 670.
*265 This presumption in favor of the community is juris et de jure as to the husband and it is well settled that where immovable property is purchased in the name of the husband during the marriage and community the presumption is conclusive and final unless there is contained in the act of acquisition the double declaration that the property is acquired with the separate funds of the husband and for his separate estate. Succession of Hemenway, 228 La. 572, 83 So.2d 377; Slaton v. King, 214 La. 89, 36 So.2d 648; Lewis v. Clay, 221 La. 663, 60 So.2d 78.
However, the wife may overcome this presumption, even though a recital of paraphernality is not contained in the act of acquisition, by clear and positive proof that the purchase price was paid with her paraphernal funds and that these funds were administered and invested by her. Succession of Schnitter, 220 La. 323, 56 So.2d 563; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Succession of McMahon, 176 La. 63, 145 So. 269.
The rule is set out in Prince v. Hopson, 230 La. 575, 582, 89 So.2d 128, 130, as follows:
"When a married woman buys property in her own name, failure to make a recitation of paraphernality in the deed is not fatal, and she may overcome the presumption of community by showing (1) that the funds constituting the price paid for the property were paraphernal funds, (2) that they were administered by her, and (3) that they were invested by her. * * * The proof necessary to overcome this presumption must be strict, clear, positive, and legally certain."
The only question involved in the instant case is whether or not there has been sufficient proof of the three requirements in order to establish paraphernality.
We are satisfied that the proof offered is sufficient to meet the first requirement, i. e., that the funds constituting the price paid for the property were paraphernal funds. The deposit of $790 on the purchase price was made before the marriage took place. And the checking account in the decedent's name alone was opened with a deposit of $7,310 also before the marriage took place. Both were therefore brought into the marriage by the wife and were her separate property under LSA-Civil Code Art. 2334 which provides in part "Separate property is that which either party brings into the marriage * * *". Both amounts together constituted the entire price paid for the property. The larger amount ($7,110), the only one of the two paid for the property after the marriage, is directly and with certainty traceable to the checking account, for it was drawn out of that particular account, and is smaller than the $7,310 originally deposited in the checking account. Therefore the deposit of $95, made on the same date as the withdrawal of said larger amount of $7,110, was not necessary to permit such a withdrawal. The $7,110 actually formed part of the original bank deposit made before the marriage and after this first withdrawal a sufficient amount of money remained in the checking account to more than cover the $95 deposit.
Arguendo, even if we assume that the deposit of $95 made in the wife's checking account on February 7, 1945, occurred before and not after the withdrawal of $7,110 by certified check and that this $95 was community funds, this would not convert the checking account from separate property into community property at that time. For as was said in the case of Graves v. United States Rubber Co., 237 La. 505, 513, 111 So.2d 752, 755:
"The mere mixing of separate and community funds in the same account does not of itself convert the entire account into community property and does not prevent tracing of separate funds with sufficient certainty to establish separate ownership of specific property paid for by checks on the account."
*266 Nor can there be any question about the fact that the second and third requirements also have been proved. The funds used to purchase the property certainly were administered by the wife in view of the fact that they were deposited by her in the checking account only in her name prior to the marriage and so remained until withdrawn by her. And the first withdrawal by the wife from the checking account was actually invested by her in the property in question.
For the reasons assigned the judgment appealed from is affirmed, appellant to pay all costs.
Affirmed.